1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMAZON.COM, INC., a Delaware corporation; and AMAZON.COM SERVICES LLC, a Delaware limited liability corporation,

Plaintiffs,

v.

LIANG JIN ZHENG, an individual; CHANG GAO, an individual; and DOES 1-10,

Defendants.

No.

**COMPLAINT FOR DAMAGES, AND EQUITABLE RELIEF**

## I.    INTRODUCTION

1.     This case involves Defendants Liang Jin Zheng's and Chang Gao's coordinated use of false assertions of intellectual property rights to target content and product listings in the Amazon.com store (the "Amazon Store"). Defendants used fraudulent trademark applications filed with the United States Patent and Trademark Office ("USPTO") to improperly gain access to Amazon's Brand Registry program, an intellectual property-protection service. Defendants then issued thousands of fraudulent takedown notices to Amazon, resulting in the temporary removal of the product listings of Amazon's selling partners from the Amazon Store. Amazon.com, Inc. and Amazon.com Services LLC (collectively, "Amazon") bring this lawsuit to prevent and enjoin Defendants from causing future harm to Amazon's customers, selling partners, and Amazon itself; and to hold Defendants accountable for their illegal actions.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

2.    Amazon.com Services LLC owns and operates the Amazon Store, and Amazon's affiliates own and operate equivalent international stores and websites. Amazon's stores offer products and services to customers in more than 100 countries around the globe. Some of the products are sold directly by Amazon entities, while others are sold by Amazon's numerous third-party selling partners. Amazon is one of the most well-recognized, valuable, and trusted brands in the world. To protect its customers and safeguard its reputation for trustworthiness, Amazon has invested heavily, both in terms of time and resources, to prevent fraud and abuse in Amazon's stores and to ensure the quality and authenticity of the products available in Amazon's stores.

3.    As part of this mission, and consistent with the notice-and-takedown procedure set forth in the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 512, Amazon has developed a suite of intellectual property-protection mechanisms for rightsholders to submit requests for removal of content that they believe violates their intellectual property rights. One of Amazon's intellectual property-protection services is Amazon Brand Registry, which provides enrolled brands with access to advanced capabilities to find and report infringement violations in the Amazon Store. To be eligible for Brand Registry, rightsholders must have an active trademark registration, or in some circumstances, a pending trademark application.

4.    Amazon also invests heavily to protect its third-party selling partners and to ensure that Amazon's intellectual property-protection measures are not abused by bad actors, so that listings of non-infringing products remain active and available for purchase by Amazon customers.

5.    Defendants abused Brand Registry by asserting false trademark rights to target and remove product listings in the Amazon Store, even though they had no ownership rights to the content that they targeted. On information and belief, Defendants profited from their fraudulent scheme through the collection of fees from unknown bad actors who paid Defendants to target the product listings of the bad actors' selected competitors. On further information and

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

belief, Defendants also reached out to some victim sellers and demanded that the sellers pay money to Defendants in exchange for Defendants withdrawing their false infringement notices.

6.      Despite Amazon's efforts to curb this type of abuse, in limited circumstances Defendants' scheme worked and materials related to some product listings were temporarily removed from the Amazon Store in response to Defendants' invalid and fraudulent complaints, resulting in losses to victim selling partners. Defendants' willful deception has resulted in direct harm to Amazon, which has expended significant resources in investigating and addressing Defendants' wrongdoing. Defendants' actions have also caused financial harm to Amazon's selling partners, and Defendants' illicit conduct also threatens to undermine customer trust in the Amazon Store as a store with a wide selection of products and the best prices. Amazon brings this lawsuit to hold Defendants accountable and to prevent Defendants from inflicting future harm to Amazon, its selling partners, and its customers.

## II.    PARTIES

7.      Amazon.com, Inc. is a Delaware corporation with its principal place of business located in Seattle, Washington. Amazon.com Services LLC is a Delaware limited liability company with its principal place of business in Seattle, Washington.

8.      Defendants are a collection of individuals and entities, both known and unknown, who conspired and operated in concert with each other to falsely assert copyright and other intellectual property rights to seek removal of content from product listings in the Amazon Store. Defendants took intentional and affirmative steps to hide their true identities and whereabouts from Amazon by using fake contact information in their communications with Amazon. Defendants are subject to liability for their wrongful conduct both directly and under principles of secondary liability including, without limitation, *respondeat superior*, vicarious liability, and/or contributory liability.

9.      Defendant Liang Jin Zheng ("Zheng") is an individual residing in Baton Rouge, Louisiana. On information and belief, Defendant Zheng personally participated in and/or had the

COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 3

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit from that wrongful conduct.

10. Defendant Chang Gao ("Gao") is an individual residing in Queens, New York. On information and belief, Defendant Gao personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit from that wrongful conduct.

11. On information and belief, Doe Defendants 1-10 (the "Doe Defendants") are individuals and entities working in active concert with each other, and Defendants Zheng and Gao, to file fraudulent trademarks to gain access to Brand Registry, and/or to prepare and submit fraudulent takedown requests to Amazon. The identities of the Doe Defendants are currently unknown to Amazon.

12. Defendants Zheng, Chang Gao, and the Doe Defendants are collectively referred to as "Defendants."

### III.     JURISDICTION AND VENUE

13. The Court has subject matter jurisdiction over Amazon's claim under Title II of the DMCA, 17 U.S.C. § 512 (First Claim) pursuant to 28 U.S.C. §§ 1331 and 1338(a). The Court has subject matter jurisdiction over Amazon's claims for common law torts under Washington law (Second through Fifth Claims) pursuant to 28 U.S.C. §§ 1332 and 1367.

14. The Court has personal jurisdiction over Defendants because they committed tortious acts directed to the State of Washington, and Amazon's claims arise from those activities. Defendants affirmatively sought and used the services of Amazon, a corporation with its principal place of business in Washington, through Amazon's Brand Registry program. Defendants specifically targeted the Amazon Store, including by submitting false information to Amazon to create customer accounts, and by issuing fraudulent takedowns directed at products listed for sale in the Amazon Store. Defendants committed or facilitated the commission of tortious acts directed to Amazon in Washington, and have wrongfully caused Amazon injury in Washington.

COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 4

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

15.     Specifically, Defendants created and/or used Brand Registry accounts, and in doing so, entered into binding and enforceable agreements with Amazon in Washington by accepting the Brand Registry Terms of Use. The Defendants used their Brand Registry accounts to direct fraudulent conduct at Amazon in Washington, including by falsely asserting to Amazon that they possessed intellectual property rights in content and products listed in the Amazon Store.

16.     Personal jurisdiction is also proper in this Court because Defendants consented to exclusive jurisdiction in the state and federal courts of King County, Washington, when they agreed to Amazon's Conditions of Use[1] in order to create Amazon customer accounts, and again each time they logged into those accounts, among other activities. The Conditions of Use contain a Washington forum selection clause that states: "Any dispute or claim relating in any way to your use of any Amazon Service will be adjudicated in the state or Federal courts in King County, Washington, and you consent to exclusive jurisdiction and venue in these courts."[2] The Conditions of Use also contain a Washington choice-of-law provision.[3]

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the Western District of Washington. Venue is also proper because Defendants consented to exclusive venue in King County, Washington, when they agreed to Amazon's Conditions of Use in order to create Amazon customer accounts in the Amazon Store, among other activities.

18.     Pursuant to Local Civil Rule 3(e), intra-district assignment to the Seattle Division is proper because the claims arose in this Division, where (a) Amazon resides, (b) injuries giving rise to the suit occurred, and (c) Defendants directed their unlawful conduct.

---

[1] "Conditions of Use," https://www.amazon.com/gp/help/customer/display.html?nodeId=GLSBYFE9MGKKQXXM (last accessed Nov. 20, 2024).

[2] *Id.*

[3] *Id.*

COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 5

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

## IV.    FACTUAL BACKGROUND

### A.    The DMCA's Notice-And-Takedown Procedure, 17 U.S.C. § 512.

19.    In 1998, Congress passed the DMCA "to facilitate the robust development and world-wide expansion of electronic commerce, communications, research, development, and education in the digital age." S. REP. NO. 105-190, at 1-2 (1998). Given the nature of the internet, online service providers often are not in the best position to make sophisticated judgments about the nature or legality of the materials that users post or contribute. Online service providers often lack necessary information (for example, information about the existence of licenses between their users and rightsholders) to make determinations about whether material posted to a website infringes lawfully-held copyrights. Understanding this, Congress struck a careful balance with the DMCA between protecting the legitimate rights of copyright owners against the incidence of online infringement while fostering the development and growth of internet services, by creating a safe harbor from copyright infringement claims for service providers that meet certain conditions.

20.    In particular, Title II of the DMCA, 17 U.S.C. § 512(c), provides a "notice-and-takedown" framework that gives rightsholders and online service providers both procedural consistency and legal certainty in how complaints of copyright infringement based on user content are handled. This framework relies on those asserting exclusive rights under copyright to provide particularized details about their claims of infringement, including an assurance under penalty of perjury that the complaining party is authorized to act on behalf of the owner of an exclusive right, and a statement that the submitter has a good faith belief that the complained-of use of the copyrighted content is not authorized. Recognizing that service providers are intermediaries and cannot, and should not, be required to make difficult legal determinations about the status of copyrights and content, the DMCA's notice-and-takedown framework places the burden on those asserting rights—who are better positioned to know the facts relating to copyright ownership and infringement—to submit notifications of claimed infringement that contain certain elements. 17 U.S.C. § 512(c)(3)(A). In turn, Subsection 512(c) of the DMCA

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

offers service providers that host content posted by third parties certain protections from copyright liability for third-party content if, in addition to meeting other conditions, the service provider expeditiously removes or disables access to materials complained of in compliant notifications. 17 U.S.C. § 512(c)(1). Indeed, an intermediary risks losing protection under the DMCA safe harbor protection if it receives, but does not expeditiously act upon, a notification claiming infringement that contains substantially all of the specified elements, discussed below.

21.    To be effective under the DMCA, a notification of claimed infringement must be submitted in writing by a person authorized to act on behalf of the owner of the rights that are allegedly being infringed, and it must contain certain elements. 17 U.S.C. § 512(c)(3)(A). The elements of a DMCA-compliant notification of claimed infringement are:

a.    A signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed. 17 U.S.C. § 512(c)(3)(A)(i).

b.    Identification of the copyrighted work claimed to have been infringed. 17 U.S.C. § 512(c)(3)(A)(ii).

c.    Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material. 17 U.S.C. § 512(c)(3)(A)(iii).

d.    Information reasonably sufficient to permit the service provider to contact the complaining party. 17 U.S.C. § 512(c)(3)(A)(iv).

e.    A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law. 17 U.S.C. § 512(c)(3)(A)(v).

f.    A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed. 17 U.S.C. § 512(c)(3)(A)(vi).

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

22.     The DMCA specifically requires rightsholders to support their claims of infringement with statements made under penalty of perjury, and it relies on the accuracy of the notifications that persons making assertions of copyright infringement submit to service providers. Accordingly, neither the DMCA's notice-and-takedown framework, nor its conditions for safe-harbor protections, require a service provider to proactively monitor its service or affirmatively to seek facts indicating infringing activity. 17 U.S.C. § 512(m).

23.     The DMCA also protects the service providers' reasonable expectations that they will not be subjected to fraudulent takedown requests. In particular, the DMCA provides a cause of action to any service provider that is injured due to knowing, material misrepresentations in a notification of allegedly infringing material: "Any person who knowingly materially misrepresents under this section . . . that material or activity is infringing . . . shall be liable for any damages, including costs and attorneys' fees, incurred . . . by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing . . . ." 17 U.S.C. § 512(f).

**B.      Amazon's Systems for Protecting Rightsholders and Processing Takedown Requests.**

24.     Amazon works hard to make the Amazon Store a place where customers can conveniently select from a wide array of authentic and non-infringing products at competitive prices.

25.     Amazon respects intellectual property rights and invests substantial resources to ensure that when customers make purchases through the Amazon Store, either directly from Amazon or from one of its millions of selling partners, customers receive non-infringing products made by the true manufacturer of those products. In 2023 alone, Amazon invested over $1.2 billion and employed more than 15,000 people to protect its stores from counterfeits, fraud, and other forms of abuses. Amazon stopped over 700,000 suspected bad-actor selling accounts before they published a single listing for sale.

COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 8

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

26.     In 2017, Amazon launched Brand Registry, a free service that offers rightsholders an enhanced suite of tools for monitoring and reporting potential instances of infringement, regardless of their relationship with Amazon. To be eligible for Brand Registry, rightsholders must have an active trademark registration, or in some circumstances, a pending trademark application.[4] Brand Registry delivers automated brand protections that use machine learning to predict potential infringement and offers registered brands tools to proactively protect their intellectual property. Brand Registry also offers participants enhanced search utilities that use state-of-the-art image search technology to search for and report potentially infringing product listings more easily. Brand Registry further provides rightsholders a streamlined procedure for reporting instances of alleged infringement, including trademark and copyright infringement, using the "Report a Violation" tool.

27.     Consistent with the notice-and-takedown procedures set forth in the DMCA, Amazon has developed multiple mechanisms for copyright owners to submit notifications of copyright infringement. The three main methods are (1) by notifying Amazon's Copyright Agent in writing;[5] (2) if the copyright owner has an Amazon account, by submitting notice via Amazon's Report Infringement form;[6] and (3) if the copyright owner has a Brand Registry account, by using Amazon's "Report a Violation" Tool.

28.     Pursuant to the DMCA, regardless of the notification method, Amazon asks copyright owners or their agents submitting written notifications of infringement to include both "[a] statement by you that you have a good-faith belief that the disputed use is not authorized by the copyright owner, its agent, or the law" and "[a] statement by you, made under penalty of perjury, that the above information in your notice is accurate and that you are the copyright owner or authorized to act on the copyright owner's behalf."

---

[4] The detailed eligibility requirements for Brand Registry are accessible at https://brandservices.amazon.com/brandregistry/eligibility.

[5] Rightsholders need not have an Amazon customer, seller, or Brand Registry account in order to submit notices of claimed copyright infringement to Amazon's Copyright Agent.

[6] https://www.amazon.com/report/infringement/signin. A printout of a blank Report Infringement form for a copyright complaint is attached as **Exhibit A** to this Complaint.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

29.     For example, before submitting a takedown request through the "Report Infringement" form or Amazon's Brand Registry "Report a Violation" tool, the submitter must read and affirm the following statements:

a.     "I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law."

b.     "I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."

c.     "I understand that, if accepted, the information included in this report may be shared by Amazon with all the reported sellers, with the exception of any order ID number(s)."

30.     When Amazon receives a notice of claimed copyright infringement, it confirms that the notice contains the elements required by the DMCA and, if appropriate, expeditiously removes the content that allegedly infringes the purported copyright owner's rights, both to comply with the DMCA and to protect the interests of legitimate rightsholders. This can lead to the removal of entire product listings, or materials appearing in product listings (such as product images), from the Amazon Store unless and until the seller takes the appropriate steps to have what was removed reinstated.

31.     As an online service provider, Amazon often must rely on the accuracy of the statements submitted by purported rightsholders, particularly as copyrights are often unregistered.

32.     Some bad actors, however, have sought to abuse Amazon's reporting and takedown processes to seek removal of materials from product listings even if they have no valid rights to assert. For example, some bad actors send Amazon takedown requests that falsely accuse a product listing of infringing the bad actor's purported copyright.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

33.    One tactic that bad actors use to appear as legitimate rightsholders involves creating fake, disposable websites, with images scraped from the Amazon Store, and then submitting takedown requests that falsely claim copyright ownership over the scraped images. The bad actors then submit copyright complaints against those same product listings, presenting the URLs for the "dummy" websites, and the scraped images, as purported evidence that those product listings infringe the bad actors' protected copyrights.

34.    Amazon also allows rightsholders to report listings that violate their trademark rights, including through Amazon's Report Infringement form and Amazon's Brand Registry "Report a Violation" tool. Amazon handles and processes notices of trademark infringement for products listed for sale in the Amazon Store in a similar manner to how it handles notices of copyright infringement, as set forth above. Once Amazon receives a report that a product or listing infringes on a rightsholder's trademark, Amazon will review that claim and determine the appropriate response to protect the rightsholder, the Amazon Store, and its customers.

35.    Another tactic bad actors use to take advantage of Amazon's intellectual property infringement policies is to report non-infringing listings and falsely claim the listings violate their trademark rights, which can involve tampering with product listings to falsely insert trademarks into the product images or descriptions prior to submitting trademark complaints.

36.    Bad actors may use these tactics as a way of attacking and fraudulently suppressing or altering listings for others' products so that consumers are more likely to buy the same products from the bad actors or their affiliates, rather than from the victim selling partners who are the subject of the attacks. Indeed, a fraudulent assertion of an intellectual property violation can be indistinguishable from a legitimate one, and may trigger Amazon's obligations to remove the product listing from the Amazon Store. To the extent that a false assertion of infringement results in the removal of content from accused product listings, however temporarily, that unlawful and expressly prohibited conduct undermines the trust that customers, sellers, and manufacturers place in Amazon and tarnishes Amazon's brand and reputation, thereby causing irreparable harm to Amazon. This false assertion also harms Amazon selling

COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 11

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

partners, whose ability to sell their products in the Amazon Store is adversely impacted when their listings are removed.

37.     Amazon innovates on behalf of customers and selling partners to improve Amazon's notice-and-takedown processes, and to combat abuse. Amazon employs dedicated teams of software engineers, research scientists, program managers, and investigators to help ensure that legitimate sellers and product listings remain in the Amazon Store despite the efforts of bad actors to abuse the notice-and-takedown framework for intellectual property violations and to exploit Amazon's systems.

38.     In addition to these measures, Amazon actively cooperates with rightsholders and law enforcement to identify and prosecute bad actors suspected of engaging in illegal activity. Lawsuits like this one are integral components of Amazon's efforts to combat improper and fraudulent takedown schemes.

**C.     Process for Opening A Brand Registry Account.**

39.     Signing up for Brand Registry requires several affirmative actions on the part of the applicant, including acceptance of the Brand Registry Terms of Use.

40.     When a person applies to participate in Brand Registry, Amazon presents them with the following screen:

---

**Terms of Use**

**Amazon Brand Registry Terms of Use**

We want every brand to join and use Brand Registry, so we have modified these Terms to make them as simple as possible.  Effective 4/25/2020, the following terms apply to your use of Brand Registry:

1. You represent that you own or are authorized by the brand to act on behalf of any brands you register in Brand Registry.
2. You agree that you will provide information that is accurate and truthful to the best of your knowledge in connection with the use of Brand Registry.
3. The Conditions of Use associated with your Amazon account will not apply to your use of Brand Registry.

Go back     Accept and continue

---

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

41.     As shown above, the Brand Registry enrollment screen requires the applicant to read and affirm the following statement: "You agree that you will provide information that is accurate and truthful to the best of your knowledge in connection with the use of Brand Registry."

42.     Additionally, to be eligible for a Brand Registry account, a rightsholder must demonstrate that they have an active trademark registration or, in some circumstances, a pending trademark application. In order to verify that the Brand Registry account applicant has an active trademark registration or pending trademark application, Amazon sends a registration code to the email address or addresses provided for the attorney of record for the trademark holder or applicant, as the email address or addresses appear in the USPTO's records. Brand Registry applicants can only complete their enrollment if they provide this registration code to Amazon to confirm their ownership of the trademark registration or application they have identified.

### D.     Defendants' Fraudulent Scheme.

43.     Through extensive investigation, Amazon has uncovered Defendants' multi-stage fraud scheme. First, Defendants created at least 143 Amazon customer accounts, some of which were created using false information. Second, on information and belief, Defendants conspired with unknown bad actors to file or acquire fraudulent trademark applications filed with the USPTO. Third, Defendants used certain of the customer accounts they had created, along with the fraudulent trademark applications, to open at least seven Brand Registry accounts (the "Fraudulent Brand Registry Accounts").[7] Fourth, after gaining access to Brand Registry, Defendants used the Fraudulent Brand Registry Accounts to submit at least 3,575 notices of infringement which attacked at least 5,074 distinct listings offered by 283 victim selling partners. Defendants' false notices of infringement caused Amazon to suspend or block some of the listings, at least temporarily. Each step in Defendants' scheme is detailed below.

---

[7] The Fraudulent Brand Registry Accounts are identified in Schedule 1 attached to this Complaint.

COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 13

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

i.    **Defendants Created Network of Amazon Customer Accounts.**

44.    As described below, Amazon identified Defendants and uncovered the extent of their fraudulent scheme through a review of Amazon's customer account records connected to the fraudulent notices of infringement and further investigation of the information in those customer records.

45.    Amazon's investigation ultimately determined that Defendants were responsible for at least 143 Amazon customer accounts, seven of which were directly linked to the creation of the seven Fraudulent Brand Registry Accounts. The Amazon customer accounts were connected with each other through the following commonalities: account creator name, physical addresses, internet protocol addresses, phone numbers, browser identification numbers,[8] account creation dates, email addresses, and other identifying information.

46.    Specifically, the names of Defendants Zheng and Gao were listed on multiple customer accounts in the network. In addition, at least 72 of the accounts listed in their profile one of two physical addresses: 718 Oneal Lane, Baton Rouge, Louisiana 70816-1721 ("Oneal Lane Address"), and 845 Sedona Pines Drive, Baton Rouge, Louisiana 70816-5548 ("Sedona Pines Address"). The Oneal Lane Address and the Sedona Pines Address are both closely tied to Defendants.

47.    First, Zheng has registered three corporate entities using the Oneal Lane Address between 2010 and the present: (1) Great Taste (Book Number 62-5582) was registered by Zheng in October 2010 and expired in October 2020; (2) Five Stars 3502 Inc. (Charter Number 42625548D) was registered by Zheng in April 2017 and remains active; and (3) Great Taste CZ Inc. (Charter Number 45035437D) was registered by Zheng in July 2022 and remains active. A restaurant with the name Great Taste is currently operating at the Oneal Lane Address.

48.    Second, Gao's public profile on LinkedIn, a business networking website, states that he has been a manager of Five Stars 3502 Inc. since April 2013. Corporate records further

---

[8] A "browser identification number" is a unique number generated from information collected about the software and hardware of the computer being used to access a website.

COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 14

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

indicate that Zheng is a director of that entity, which is registered at the Oneal Lane Address. At least one Amazon customer account created under Gao's name listed the Oneal Lane Address.

49.    Third, on information and belief, Zheng's and Gao's home address was, at all relevant times, the Sedona Pines Address. Gao registered at least six Amazon customer accounts to the Sedona Pines Address under his own name, and Zheng listed the Sedona Pine Address on at least one Amazon customer account under her name.

50.    At least 72 customer accounts were connected to the remaining accounts in Defendants' network through common internet protocol addresses, phone numbers, browser identification numbers, email addresses, and other identifying information.

51.    When signing up for an Amazon customer account, a user is notified on the "Create Account" screen that "[b]y creating an account you agree to Amazon's Conditions of Use,"[9] and is provided with a hyperlink to Amazon's Conditions of Use. As a result, each person who creates an Amazon customer account has agreed to and is bound by Amazon's Conditions of Use.

52.    The Conditions of Use provide that users "may not misuse the Amazon Services" and "may not use a false e-mail address, impersonate any person or entity, or otherwise mislead as to the origin of a card or other content."[10] By opening the customer accounts for an improper purpose and by providing false information in connection with certain of the accounts, Defendants violated the Conditions of Use.

ii.    **Defendants Improperly Gained Access to Brand Registry Using Fraudulent Amazon Customer Accounts and Fraudulent Trademark Applications.**

53.    One of the ways that an applicant to Brand Registry can open a Brand Registry account is by linking it to an existing Amazon customer account. Defendants logged into certain of the customer accounts they fraudulently created to further their scheme, and then used

---

[9] Conditions of Use.

[10] *Id.*

COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 15

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

fraudulent trademark applications filed with the USPTO to create the Fraudulent Brand Registry Accounts and gain access to the Brand Registry program.

54. **'7915 Designforyou Brand Registry Account.** For example, on November 30, 2021, Defendants registered an Amazon customer account using the email address SeBuchalte@instructor.net (the "Sebuchalte Customer Account"). On information and belief, the Sebuchalte Customer Account was created in furtherance of Defendants' false takedown scheme, as described below.

55. On December 30, 2021, an application to register the trademark "Designforyou" was filed with the USPTO (Serial No. 97197915) (the "'7915 Designforyou Trademark"). The '7915 Designforyou Trademark is the subject of a December 4, 2023 Show Cause Order (the "Zhuai Show Cause Order")[11] issued by the USPTO against individuals responsible for filing 1,083 fraudulent trademark applications. The Zhuai Show Cause Order found that these applications contained or used (1) "false or misleading information related to the identities of the applicants, signatories, attorneys of record, as well as domicile and correspondence addresses;" (2) "digitally altered or mocked-up specimens;" and/or (3) "credit card information that either proved to be false or deficient and/or eventually resulted in chargeback claims relating to allegedly fraudulent transactions." Zhuai Show Cause Order at 3-4. On information and belief, the application for the '7915 Designforyou Trademark was fraudulent for the following reasons: the mark was not in use in commerce; the specimen of use included with the application was falsified; and the application used the name and credentials of an attorney who did not actually sign or file the application. *Id*. at 4-5. On information and belief, Defendants conspired with unknown bad actors to file the application to register the '7915 Designforyou Trademark and/or to acquire the '7915 Designforyou Trademark.

56. On January 7, 2022, Defendants used the SeBuchalte Customer Account to create the Brand Registry account bearing account number 1716491 (the "'7915 Designforyou Brand

---

[11] *See In re Huang Zhuai, et al.*, accessible at: https://tsdr.uspto.gov/documentviewer?caseId=sn97197915&docId=PNR20231205115716&linkId=1#docIndex=0&page=1 (last accessed Nov. 20, 2024).

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

Registry Account"), and linked that Brand Registry Account to the then-pending application for the '7915 Designforyou Trademark. In doing so, Defendants agreed to the Amazon Brand Registry Terms of Use.

57.     On February 12, 2022, relying on Defendants' fraudulent statements and the '7915 Designforyou Trademark application, Amazon approved Defendants' application to register the '7915 Designforyou Brand Registry Account.

58.     While the USPTO initially processed the application for the '7915 Designforyou Trademark, it subsequently rejected the application on February 25, 2022. This rejection occurred after Defendants had exploited the application to gain entry to Brand Registry. The USPTO's rejection stated that after the filing fee for the application had been paid via credit card, "the cardholder disputed the transaction charging the filing fee to the credit card and the fee was subsequently refunded to the cardholder." On information and belief, the application fee for the '7915 Designforyou Trademark was paid using a stolen credit card.

59.     **Fulu Brand Registry Account.** As another example, on November 30, 2021, Defendants registered an Amazon customer account using the email address Sarail@email.com (the "Sarail Customer Account"). On information and belief, the Sarail Customer Account was created in furtherance of Defendants' false takedown scheme, as described below.

60.     On December 31, 2021, an application to register the trademark "Fulu" was filed with the USPTO (Serial No. 97198388) (the "Fulu Trademark"). The Fulu Trademark is the subject of the Zhuai Show Cause Order, discussed above, and therefore the Fulu Trademark application was fraudulent for the same reasons as the '7915 Designforyou Trademark application. Specifically, on information and belief, the Fulu Trademark was not in use in commerce; the specimen of use included with the Fulu Trademark application was falsified; and the Fulu Trademark application used the name and credentials of an attorney who did not actually sign or file the application. While the USPTO initially processed the application to register the Fulu Trademark, it subsequently rejected the application on February 25, 2022. The USPTO's rejection stated that after the filing fee for the application had been paid via credit

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

card, "the cardholder disputed the transaction charging the filing fee to the credit card and the fee was subsequently refunded to the cardholder." On information and belief, the application fee for the Fulu Trademark was paid using a stolen credit card. On further information and belief, Defendants conspired with unknown bad actors to file the application to register the Fulu Trademark and/or to acquire the Fulu Trademark.

61.     On January 6, 2022, Defendants used the Sarail Customer Account to create the Amazon Brand Registry account bearing the account number 516343 (the "Fulu Brand Registry Account"), and linked that Brand Registry Account to the then-pending application for the Fulu Trademark. In doing so, Defendants agreed to the Amazon Brand Registry Terms of Use.

62.     On January 7, 2022, relying on Defendants fraudulent statements and the pending trademark application, Amazon approved the application to register the Fulu Brand Registry Account.

63.     **Defendants' Additional Fraudulent Brand Registry Accounts.** Amazon's investigation revealed that Defendants registered additional fraudulent Brand Registry accounts using a similar modus operandi. Specifically, Defendants also registered the '7896 Designforyou Brand Registry Account, the Qmsilr Brand Registry Account, the Fianiap Brand Registry Account, the Makenomoon Brand Registry Account, and the Jxgzso Brand Registry Account (together with the '7915 Designforyou Brand Registry Account and the Fulu Brand Registry Account, the "Fraudulent Brand Registry Accounts"). Relevant details concerning the Fraudulent Brand Registry Accounts are set forth in Schedule 1 to this Complaint.

iii.     **Defendants Submitted Thousands of Fraudulent Takedown Notices to Amazon Through Brand Registry.**

64.     From December 28, 2021, through May 18, 2022, Defendants used the "Report a Violation" tool in Brand Registry to launch a broad campaign in which they attacked product listings with false reports that the listings infringed Defendants' purported copyrighted images and/or purported trademarks. During this period, they submitted at least 3,575 fraudulent notices of infringement regarding 5,074 distinct listings offered by 283 victim selling partners. These

COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 18

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

fraudulent notices of infringement caused Amazon to suspend or block some of the selling partners' listings, at least temporarily.

65.     Each time Defendants used the "Report a Violation" tool, they declared that they had a good faith belief that the content at issue violated their rights and that the use of such content was contrary to law. Defendants also declared, under penalty of perjury, that the information contained in each notification using the "Report a Violation" tool was accurate, and that they were the owner, or agent of the owner, of the described rights.

66.     Defendants knew that the content of their notifications were false, that they were not the owner or agent of the owner of the rights described in the submitted reports, and that the content they identified did not infringe any copyright or trademark they owned.

67.     In reliance on Defendants' deceptive submissions through the "Report a Violation" tool, which included all the elements that the DMCA requires for a compliant notification of claimed infringement, Amazon expeditiously acted and removed content from product listings that Defendants identified in their complaints.

68.     Amazon's subsequent investigation of Defendants' voluminous notifications through the Fraudulent Brand Registry Accounts has uncovered that Defendants willfully made fraudulent and invalid claims that their intellectual property rights had been infringed. For example, the investigation revealed that Defendants used links to images from existing Amazon product listings and then submitted them as purported copyrighted works that Defendants claimed to own.

69.     After Amazon learned that Defendants had abused the notice-and-takedown process, Amazon blocked each of the Fraudulent Brand Registry Accounts. In doing so, Amazon protected its selling partners, customers, and Amazon's reputation. Amazon also restored the majority of the product listings that had been taken down in the Amazon Store in reliance on Defendants' deceptions.

70.     **False Takedowns Through Designforyou Brand Registry Accounts.** In January and March 2022, Defendants used the "Report a Violation" tool in the Designforyou

'7915 Brand Registry Account and the Designforyou '7896 Brand Registry Account (together, the "Designforyou Accounts") to issue at least 1,900 false takedown requests to Amazon alleging that specified product listings infringed Defendants' purported copyrighted images and/or infringed the Designforyou Trademark.

71.     For example, on March 19, 2022, Defendants used the '7915 Designforyou Brand Registry Account to submit a notification of claimed infringement through the "Report a Violation" tool. The notification identified a URL on the domain m.media-amazon.com as the purported copyrighted work that Defendants owned. Amazon's further investigation revealed that the image present at the URL was a non-branded beanie printed with the word "DYNAMITE" unrelated to the '7915 Designforyou Brand Registry Trademark, and Defendants failed to provide any evidence of their ownership of the rights to that image, such as a copyright registration number. Defendants' notification was false, and Defendants knew their statements to Amazon were false because they did not create or own the content on the m.media-amazon.com domain. By making the affirmations through the "Report a Violation" tool, Defendants intended for Amazon to rely on their statements that the content reported was infringing, and Amazon did in fact rely on those statements when it removed the content from product listings that Defendants identified in their fraudulent notification.

72.     In addition to fraudulent copyright infringement claims, Defendants also submitted fraudulent notices claiming that products in the Amazon Store infringed the Designforyou Trademark.

73.     For example, on January 18, 2022, Defendants used the Designforyou Brand Registry Accounts to submit a notification of claimed trademark counterfeiting through the "Report a Violation" tool. The notification claimed that a listing for socks violated the Designforyou Trademark. However, Amazon's investigation revealed that such listings did not include the Designforyou Trademark. Instead, shortly before submitting their fraudulent notice of infringement, Defendants manipulated and altered product descriptions by adding the Designforyou Trademark to product listing pages in an effort to create the false appearance of

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

infringement. By making the affirmations listed above in the "Report a Violation" tool, Defendants intended for Amazon to rely on their statements that the reported listing was infringing, and Amazon did in fact rely on those statements when it investigated the takedown request and temporarily removed a product listing from the Amazon Store that Defendants identified in their fraudulent notification.

74.    **False Takedowns Through Fianiap Brand Registry Account.** In March 2022, Defendants used the "Report a Violation" tool in the Fianiap Brand Registry Account to issue at least 600 takedown requests alleging that specified product listings infringed Defendants' copyrighted images.

75.    For example, on March 19, 2022, Defendants used the Fianiap Brand Registry Account to submit a notification of claimed infringement through the "Report a Violation" tool. The notification identified a URL on the domain m.media-amazon.com as the purported copyrighted work that Defendants owned. Amazon's further investigation revealed that the image uploaded to the URL, a non-branded pair of shoes with sunflowers, did not have any relation to the Fianiap Brand Registry Account. Defendants' notification was false, and Defendants knew their statements to Amazon were false because they did not actually create or own the content on the m.media-amazon.com domain. By making the affirmations listed above in the "Report a Violation" tool, Defendants intended for Amazon to rely on their statements that the content reported was infringing, and Amazon did in fact rely on those statements when it removed the content from product listings that Defendants identified in their fraudulent notification.

76.    **False Takedowns Through Fulu Brand Registry Account.** In March 2022, Defendants used the Fulu Brand Registry Account to submit a total of at least 575 notifications of claimed copyright infringement through the "Report a Violation" tool. Amazon's investigation revealed that each of Defendants' claims of infringement was false because Defendants did not own any IP rights in the content of the listings subject to the notices. After Amazon learned that Defendants had abused the notice-and-takedown process by deceiving Amazon, Amazon

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

blocked the Fulu Brand Registry Account. In doing so, Amazon protected its selling partners, customers, and Amazon's reputation. Amazon also restored product listings that had been taken down in the Amazon Store in reliance on Defendants' deceptions.

77.    **False Takedowns Through Makenomoon Brand Registry Account.** In March 2022, Defendants used the Makenomoon Brand Registry Account to submit a total of at least 220 notifications of claimed copyright infringement through the "Report a Violation" tool. Amazon's investigation revealed that each of Defendants' claims of infringement was false because Defendants did not own any IP rights in the content of the listings subject to the notices.

78.    **False Takedowns Through Qmsilr Brand Registry Account.** On March 14, 2022, Defendants used the Qmsilr Brand Registry Account to submit a total of at least 310 notifications of claimed copyright infringement through the "Report a Violation" tool. Amazon's investigation revealed that each of Defendants' claims of infringement was false, and followed the same type of fraudulent scheme described above. On the same day Defendants also used the Qmsilr Brand Registry Accounts to submit a total of at least 950 notifications of claimed trademark infringement through the "Report a Violation" tool. Amazon's investigation revealed that each of Defendants' claims of infringement was false because Defendants did not own any IP rights in the content of the listings subject to the notices.

79.    **False Takedowns Through Jxgzso Brand Registry Account.** In May 2022, Defendants used the Jxgzso Brand Registry Account to submit a total of at least 1,530 notifications of claimed copyright infringement through the "Report a Violation" tool. Amazon's investigation revealed that each of Defendants' claims of infringement was false because Defendants did not own any IP rights in the content of the listings subject to the notices.

### V.    CLAIMS

### FIRST CLAIM
*(Against All Defendants)*
**Misrepresentation of Copyright Infringement Under 17 U.S.C. § 512(f)**

80.    Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 22

81.     Section 512(f) of the Copyright Act provides that "[a]ny person who knowingly materially misrepresents under this section . . . that material or activity is infringing . . . shall be liable for any damages, including costs and attorneys' fees, incurred . . . by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing . . . ." 17 U.S.C. § 512(f).

82.     Defendants submitted false DMCA takedown requests to Amazon through Amazon's "Report a Violation" tool, improperly seeking removal of materials from product listings in the Amazon Store. Defendants' notifications to Amazon falsely represented that the content or images appearing in product listings in the Amazon Store infringed on Defendants' purported copyrights.

83.     Defendants knew that these representations were false. At the time they submitted the fraudulent takedown notices to Amazon, Defendants could not have reasonably believed that they held any copyright or other intellectual property interest in the works asserted. Yet Defendants still raised these false claims with the intent to induce Amazon's reliance and to have Amazon act upon them, consistent with the notice-and-takedown procedures set forth in the DMCA and Amazon's policies.

84.     In reliance on the misrepresentations in Defendants' takedown requests, and to act expeditiously to protect what it believed at the time to be legitimate rights, Amazon temporarily removed full listings, or content from listings from the Amazon Store.

85.     By submitting takedown notifications in violation of 17 U.S.C. § 512(f), Defendants willfully, knowingly, and materially misrepresented, that product listings were infringing on their intellectual property under copyright law.

86.     As a result of Defendants' false takedown requests, Amazon suffered economic harm and expended significant resources to investigate and address Defendants' wrongdoing. Accordingly, Amazon seeks its attorneys' fees and damages, under 17 U.S.C. §512(f), in an amount to be determined at trial.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

1

2

**SECOND CLAIM**
*(Against All Defendants)*
**Breach Of Contract**

3

4

87.     Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

5

6

7

88.     By enrolling in Brand Registry and submitting takedown notifications through the "Report a Violation" tool, Defendants entered into valid and enforceable agreements with Amazon.

8

9

10

89.     When Defendants applied to Brand Registry, they agreed to provide accurate and truthful information to Amazon in exchange for the benefit of access and use of the Brand Registry services and tools.

11

12

13

14

90.     Defendants used pending USPTO trademark applications and a trademark registration to create the Fraudulent Brand Registry Accounts. In doing so, Defendants represented the marks were valid and they had rights to those marks, which representations were neither true nor accurate.

15

16

17

18

19

91.     The "Report a Violation" tool mandatory consent form is a valid and enforceable contract that imposed a duty on all users submitting a takedown notice using the tool: (1) to represent a good faith basis for the notice; and (2) to declare under penalty of perjury that the information provided is correct and accurate, and that the user is the owner or agent of the rights described therein.

20

21

22

23

24

25

92.     Each time Defendants submitted takedown notifications to Amazon through the "Report a Violation" tool, Defendants represented that they had "a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner"; and Defendants had to declare, under penalty of perjury, "that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."

26

27

93.     Defendants breached their contractual obligations to Amazon under the Brand Registry Terms of Use and the terms for using Brand Registry's "Report a Violation" tool by

COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 24

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

claiming ownership of fraudulently obtained trademark applications and a fraudulently obtained trademark registration to gain access to Brand Registry, by submitting takedown notifications regarding alleged infringement of their purported trademarks using Brand Registry's "Report a Violation" tool without a good faith basis, by knowingly submitting false information using the "Report a Violation" tool, and by falsely declaring under penalty of perjury that the content complained of violated their trademark rights.

94.    In addition, by signing up for Amazon customer accounts in the Amazon Store and logging into those accounts, among other activities, Defendants have accepted and at all relevant times were bound by Amazon's Conditions of Use.

95.    Amazon fully performed all of its obligations under the Conditions of Use.

96.    Defendants have materially breached Amazon's Conditions of Use by, among other actions, misusing Amazon's services and providing false information in connection with their Amazon customer accounts.

97.    As a result of Defendants' breach of their contracts with Amazon, Amazon suffered economic harm in an amount to be determined at trial.

## THIRD CLAIM
### *(Against All Defendants)*
### Tortious Interference with Contractual Relationship

98.    Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

99.    Amazon and third-party sellers who sell products in the Amazon Store have valid contractual relationships under the Amazon Services Business Solutions Agreement, available at https://sellercentral.amazon.com/help/hub/reference/external/G1791?locale=en-US.

100.    On information and belief, Defendants had knowledge of the existence of valid contractual relationships between Amazon and each seller of goods in the Amazon Store.

101.    Defendants knowingly and intentionally submitted to Amazon false takedown notices regarding alleged infringement of their purported trademarks and sent extortionate threats

COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 25

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

to selling partners for an improper purpose, which interfered with Amazon's legitimate business relationships with its selling partners.

102.    Defendants' submission of the false trademark takedown notices caused Amazon to investigate Defendants' claims and remove certain listings of sellers in the Amazon Store. Those actions interfered with the business relationship and expectancy between Amazon and third-party sellers using those product listings, and made performance of the contract more expensive and burdensome.

103.    As a result of Defendants' intentional interference with Amazon's legitimate business interests, Amazon suffered economic harm in an amount to be determined at trial.

## FOURTH CLAIM
### *(Against All Defendants)*
### Fraud

104.    Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

105.    Defendants knowingly misrepresented material facts regarding their rights to certain trademarks in order to induce Amazon to permit Defendants to open and operate the Fraudulent Brand Registry Accounts.

106.    Defendants conspired with unknown bad actors to file applications to register the Designforyou, Fianiap, Fulu, Makenomoon, Qmsilr, and Jxgzso Trademarks, or acquire those marks from the bad actors who filed them.

107.    Defendants knew that the statements and filings made to the USPTO regarding the applications for the Designforyou, Fianiap, Fulu, Makenomoon, Qmsilr, and Jxgzso Trademarks were fraudulent, that the marks were invalid, and that they did not have any rights to the marks. Nonetheless, by using the Designforyou, Fianiap, Fulu, Makenomoon, Qmsilr, and Jxgzso Trademarks to access Brand Registry, Defendants represented to Amazon that they owned the marks and that they were valid.

COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 26

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

108.    Amazon relied on Defendants' representations regarding the validity of the Designforyou, Fianiap, Fulu, Makenomoon, Qmsilr, and Jxgzso Trademarks, as shown in the USPTO's public records regarding the marks.

109.    Defendants knowingly misrepresented information regarding existing material facts about alleged infringement of the Designforyou, Fianiap, Fulu, Makenomoon, Qmsilr, and Jxgzso Trademarks in order to induce Amazon to investigate their takedown requests and to remove targeted product listings in the Amazon Store.

110.    Defendants knew that their representations were false at the time they submitted the fraudulent trademark takedown notifications using the "Report a Violation" tool through Brand Registry.

111.    Specifically, Defendants alleged that the listings violated their alleged trademark rights when they knew such statements to be false. Amazon did not know of the falsity of the misrepresentations and reasonably relied on Defendants' false representations to its detriment.

112.    Amazon had a right to rely on Defendants' representations in the submission of the trademark takedown notifications, especially given the "Report a Violation" tool's consent form requiring such representations to be true under penalty of perjury. At the time they submitted the fraudulent trademark takedown notifications to Amazon, Defendants could not have reasonably believed that they held any intellectual property interest in the listings they flagged as infringing. Yet Defendants still raised these false claims with the intent to induce Amazon's reliance and to have Amazon act upon them.

113.    As a result of its reliance on Defendants' intentional misrepresentations, Amazon suffered economic harm in an amount to be proven at trial.

## FIFTH CLAIM
### *(Against All Defendants)*
### Violation of Washington Consumer Protection Act, RCW 19.86.010, et seq.

114.    Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 27

115.    Defendants' filing of false and fraudulent trademark takedown notifications constitutes unfair and deceptive acts or practices in the conduct of trade or commerce, in violation of RCW 19.86.020.

116.    Defendants' filing of false and fraudulent trademark takedown notifications harms the public interest by using false claims of infringement to undermine legitimate sales by Amazon's selling partners in the Amazon Store.

117.    Defendants' false and fraudulent trademark takedown notifications directly and proximately cause harm to and tarnish Amazon's reputation and goodwill with consumers, and damages its business and property interests and rights.

118.    Accordingly, Amazon seeks to enjoin further violations of RCW 19.86.020 and recover from Defendants their attorneys' fees, costs, and actual damages, trebled.

## VI.    **PRAYER FOR RELIEF**

WHEREFORE, Amazon respectfully prays for the following relief:

A.    That the Court issue an order permanently enjoining Defendants, their officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them, from:

(i)    Submitting to Amazon any takedown notifications based on false assertions of rights of copyright ownership by any means or otherwise violating 17 U.S.C. § 512(f), whether as written submissions, through the "Report Infringement" form, or using the "Report a Violation" tool;

(ii)    enrolling or attempting to enroll in Amazon's Brand Registry program;

(iii)    filing, conspiring to obtain, or obtaining fraudulent trademark applications or filing other fraudulent declarations and statements with the USPTO in connection with trademark applications or registrations in order to gain access to Brand Registry or to issue false trademark takedown notices for content in Amazon's stores;

(iv)    issuing fraudulent trademark takedown notices using Brand Registry; and

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

(v)     assisting, aiding, or abetting any other person or entity in engaging or performing any of the activities referred to in subparagraphs (i) through (iv) above;

B.     That the Court enter judgment in Amazon's favor on all claims;

C.     That the Court enter an order requiring Defendants to pay all general, special, and actual damages that Amazon has sustained or will sustain as a consequence of Defendants' unlawful acts, and that such damages be enhanced, doubled, or trebled as provided for by RCW 19.86.020;

D.     That the Court enter an order requiring Defendants to pay the maximum amount of prejudgment interest authorized by law;

E.     That the Court enter an order requiring Defendants to pay the costs of this action and Amazon's reasonable attorneys' fees and other costs incurred in prosecuting this action, as provided for by 17 U.S.C. § 512(f), RCW 19.86.020, or otherwise allowed by law;

F.     That the Court enter an order requiring identified financial institutions restrain and transfer to Amazon all amounts arising from Defendants' unlawful activities as set forth in this lawsuit, up to a total amount necessary to satisfy monetary judgment in this case; and

G.     That the Court grant Amazon such other, further, and additional relief as the Court deems just and equitable.


DATED this 22nd day of November, 2024.

DAVIS WRIGHT TREMAINE LLP
*Attorneys for Plaintiffs*


*s/ Scott Commerson*
Scott Commerson, WSBA #58085
350 South Grand Avenue, 27th Floor
Los Angeles, CA 90071-3460
Tel: (213) 633-6800
Fax: (213) 633-6899
Email: scottcommerson@dwt.com

**<u>SCHEDULE 1</u>**

**<u>Fraudulent Brand Registry Account 1:</u>**

Brand Registry Account Name: '7915 Designforyou Brand Registry Account

| **Account Information** | **Reasons Associated Trademark is Fraudulent** |
|---|---|
| Trademark: Designforyou[1]<br>USPTO Serial No.: 97197915<br>Trademark Application Date: December 30, 2021<br>Associated Customer Account Email: SeBuchalte@instructor.net<br>Customer Account Application Date: November 30, 2021<br>Brand Registry Application Date: January 7, 2022<br>Brand Registry Approval Date: February 12, 2022 | • The '7915 Designforyou Trademark application was fraudulent because the mark was not in use in commerce; the specimen of use included with the application was falsified; and the application used the name and credentials of an attorney who did not actually sign or file the application. On information and belief, the application fee was paid for with a stolen credit card, which caused the USPTO to reject the application on February 25, 2022.<br>• The '7915 Designforyou Trademark application is also the subject of the USPTO's December 4, 2023 Show Cause Order ("Zhuai Show Cause Order"),[2] which concerned fraudulent trademark applications. |

---

[1] The "'7915 Designforyou Trademark."

[2] *See In re Huang Zhuai, et al.*, accessible at: https://tsdr.uspto.gov/documentviewer?caseId=sn97197915&docId=PNR20231205115716&linkId=1#docIndex=0&page=1 (last accessed Nov. 20, 2024).

**Fraudulent Brand Registry Account 2:**

Brand Registry Account Name: Fulu Brand Registry Account

| Account Information | Reasons Associated Trademark is Fraudulent |
|---|---|
| Trademark: Fulu[3]<br>USPTO Serial No.: 97198388<br>Trademark Application Date: December 31, 2021<br>Associated Customer Account Email: Sarail@email.com<br>Customer Account Application Date: November 30, 2021<br>Brand Registry Application Date: January 6, 2022<br>Brand Registry Approval Date: January 7, 2022 | • The Fulu Trademark application was fraudulent because the mark was not in use in commerce; the specimen of use included with the application was falsified; and the application used the name and credentials of an attorney who did not actually sign or file the application. On information and belief, the application fee was paid for with a stolen credit card, which caused the USPTO to reject the application on February 25, 2022.<br><br>• The Fulu Trademark application is also the subject of the Zhuai Show Cause Order. |

---

[3] The "Fulu Trademark."

**Fraudulent Brand Registry Account 3:**

Brand Registry Account Name: '7896 Designforyou Brand Registry Account

| Account Information | Reasons Associated Trademark is Fraudulent |
|---|---|
| Trademark: Designforyou[4]<br><br>USPTO Serial No.: 97197896<br><br>Trademark Application Date: December 30, 2021<br><br>Associated Customer Account Email: coletonmcdermott75@gmail.com<br><br>Customer Account Application Date: November 30, 2021<br><br>Brand Registry Application Date: January 7, 2022<br><br>Brand Registry Approval Date: January 11, 2022 | • The '7896 Designforyou Trademark application was fraudulent because the mark was not in use in commerce; the specimen of use included with the application was falsified; and the application used the name and credentials of an attorney who did not actually sign or file the application. On information and belief, the application fee was paid for using a stolen credit card, which caused the USPTO to reject the application on February 25, 2022.<br><br>• The '7896 Designforyou Trademark application is also the subject of the Zhuai Show Cause Order. |

---

[4] The "'7896 Designforyou Trademark."

**Fraudulent Brand Registry Account 4:**

Brand Registry Account Name: Qmsilr Brand Registry Account

| Account Information | Reasons Associated Trademark is Fraudulent |
|---|---|
| Trademark: Qmsilr[5]<br><br>USPTO Serial No.: 97200075<br><br>Trademark Application Date: January 3, 2021<br><br>Associated Customer Account Email: TraneJaysendV@yahoo.com<br><br>Customer Account Application Date: October 31, 2021<br><br>Brand Registry Application Date: January 20, 2022<br><br>Brand Registry Approval Date: January 20, 2022 | • The Qmsilr Trademark application was fraudulent because the mark was not in use in commerce; the specimen of use included with the application was falsified; and the application used the name and credentials of an attorney who did not actually sign or file the application. On information and belief, the application fee was paid for using a stolen credit card, which caused the USPTO to reject the application on February 28, 2022.<br><br>• The Qmsilr Trademark application is also the subject of the Zhuai Show Cause Order. |

---

[5] The "Qmsilr Trademark."

4

**Fraudulent Brand Registry Account 5:**

Brand Registry Account Name: Fianiap Brand Registry Account

| Account Information | Reasons Associated Trademark is Fraudulent |
|---|---|
| Trademark: Fianiap[6] <br> USPTO Serial No.: 90335998 <br> Trademark Application Date: November 23, 2020 <br> Associated Customer Account Email: bellworthyjere48@gmail.com <br> Customer Account Application Date: November 30, 2021 <br> Brand Registry Approval Date: January 19, 2022 | • The Fianiap Trademark application was fraudulent because the mark was not in use in commerce; the specimen of use included with the application was falsified; and the application used the name and credentials of an attorney who did not actually sign or file the application. <br><br> • The Fianiap Trademark application is also the subject of the USPTO's December 13, 2022 Show Cause Order ("Asin Enterprise Show Cause Order"), which concerned fraudulent trademark applications.[7] |

---

[6] The "Fianiap Trademark."

[7] Accessible at: https://tsdr.uspto.gov/documentviewer?caseId=sn90335998&docId=PNR20221213163420&linkId=2#docIndex=1&page=1 (last accessed Nov. 20, 2024).

**Fraudulent Brand Registry Account 6:**

Brand Registry Account Name: Makenomoon Brand Registry Account

| Account Information | Reasons Associated Trademark is Fraudulent |
|---|---|
| Trademark: Makenomoon[8] <br><br> USPTO Serial No.: 97154448 <br><br> Trademark Application Date: December 3, 2021 <br><br> Associated Customer Account Email: agustinaveronyca31@gmail.com <br><br> Customer Account Application Date: August 15, 2021 <br><br> Brand Registry Application Date: December 9, 2021 <br><br> Brand Registry Approval Date: December 9, 2021 | • The Makenomoon Trademark application was fraudulent because the mark was not in use in commerce; the specimen of use included with the application was falsified; and the application used the name and credentials of an attorney who did not actually sign or file the application. <br><br> • On May 18, 2024, the USPTO issued a non-final office action regarding the Makenomoon Trademark, requiring the applicant to provide information that the attorney of record is actually an attorney licensed to practice before the USPTO. |

---

[8] The "Makenomoon Trademark."

**Fraudulent Brand Registry Account 7:**

Brand Registry Account Name: Jxgzso Brand Registry Account

| Account Information | Reasons Associated Trademark is Fraudulent |
|---|---|
| Trademark: Jxgzso[9]<br><br>USPTO Serial No.: 97161237<br><br>Trademark Application Date: December 7, 2021<br><br>Associated Customer Account Email: valinasereena55@gmail.com<br><br>Customer Account Application Date: November 30, 2021<br><br>Brand Registry Application Date: December 18, 2021<br><br>Brand Registry Approval Date: December 21, 2021 | • The Jxgzso Trademark application was fraudulent because the mark was not in use in commerce; the specimen of use included with the application was falsified; and the application used the name and credentials of an attorney who did not actually sign or file the application. |

---

[9] The "Jxgzso Trademark."